### J. R. Looney *v.* The State.

Theft — Insanity — Charge of the Court.— When in a trial for theft the defense is the insane propensity to steal known as kleptomania, and there is evidence tending to sustain that defense, the charge to the jury should distinctly present and specifically treat of the peculiar issue thus raised, and not stop with submitting the usual test of the defendant's ability in general to distinguish right from wrong. See the opinion for considerations pertinent to the question.

Appeal from the District Court of Montgomery. Tried below before the Hon. James Masterson.

Appellant was indicted for the theft, on October 8, 1877, of a suit of clothes worth $8, a suit of boys' clothes worth $9, a pair of pants worth $2, three coats worth $3.25 each, one coat worth $1, two shirts worth $3.50 each, one shirt worth $2.50, a pair of cuffs worth 50 cents, a box of crayons worth 50 cents, two boxes of collars worth

25 cents each, two boys' hats worth 75 cents each, two bottles essence of lemon worth 25 cents each, three bunches of lamp-wicks worth 25 cents each, a pair of scissors worth 50 cents, ten coat hooks worth 75 cents, and one knife worth 25 cents, the property of W. T. Nobles. The jury found the appellant guilty, and assessed his punishment at a term of two years in the penitentiary.

Nobles was a merchant in the town of Montgomery, and at his invitation the appellant occupied an upstairs room in the store, and was entrusted with a key to the store-room. About October 1, 1877, Nobles missed a suit of clothes, and within a few days a pair of boys' boots, which latter articles he found in the possession of a boy who was attending a school taught by the appellant. The boy said that he got the boots from the appellant, and this disclosure led to the examination of the latter's trunk by Nobles, and to the discovery in the trunk of the several articles described in the indictment.

The defendant had previously borne an .excellent reputation, and Nobles deferred charging him with the offense or speaking of it to others for several days, suffering in the meantime much mental distress. After much reflection he spoke to Parson Littlepage and the two devised the means whereby the matter should be investigated. Pursuant to their scheme Littlepage went with the defendant to his room and engaged him in conversation, and presently Nobles appeared and charged the defendant with possession of the stolen goods. The defendant denied that he had them and told Nobles to examine his trunk, and informed him where the key could be found. He declared that such goods as would be found in the trunk had been sent him by his father, and that he could produce receipts or papers showing his rightful possession of them. During this part of the dialogue, Nobles' clerk, Dupree, came into the room. Nobles took the goods from

the trunk and showed them to defendant, who then said that they were Nobles' property.

The cross-examination of this and the other witnesses to these facts disclosed that when the defendant confessed to these facts, and after indulging in a few moments of apparent study, he said that the explanation of the matter was that from boyhood he had been afflicted with an ungovernable habit of appropriating articles of property belonging to others, many of them articles for which he could have no possible use, such as photographs of entire strangers, combs, brushes, books, and could not tell how, when or where he came in possession of them.

The general current of the evidence bespoke the opinions of the witnesses that he was not strong of mind, many in his behalf declaring that they believed him incapable of comprehending the right or wrong of moral action; and this appears to have been the sole defense relied upon. An eminent divine, who was also a medical expert, and who had studied the case, declared his belief in the mental incompetency of the defendant.

*J. R. Peel*, for the appellant, filed an able brief.

*H. Chilton*, Assistant Attorney General, for the State. The defense was rested on the ground of insanity — moral insanity.

The charge of the court, if it contains error, impresses me as erring in defendant's favor. It first sets forth the general doctrine that defendant could not be convicted if he was "unable to distinguish between right and wrong." This instruction is in conformity to the rule announced repeatedly by this court. *Warren* v. *State*, 9 Texas Ct. App. 619; *Clark* v. *State*, 8 Texas Ct. App. 359; *Williams* v. *State*, 7 Texas Ct. App. 163.

In addition the court gave a special charge to the effect: "that if the defendant did take the goods of W. T.

Nobles, at the time and in the manner charged, but at the time of committing the act was laboring under such a defect of reason, *as not to know the nature* and *quality of the act he was doing,* or if he did know it, that he did not know *that he was doing wrong,* then you will acquit." Now, the general charge, taken in connection with the special request, accurately follows the rules indicated by this court, and it is submitted that where district judges in good faith pursue the course antecedently marked out, they should be sustained, except upon clear and undoubted conviction of error.

The second special charge given by the court distinctly recognizes the theory of "moral insanity," and as a part of this theory the effect of "morbid action," as sufficient cause of acquittal. It is not believed that these fallacies have ever been, or can be, sanctioned by the appellate courts of this State. The English courts have emphatically condemned the idea, and adhere to the test: "Did defendant know what he was doing? Did he also know that what he was doing was wrong?" Watson's case, 1 Whart. & Stille Med. Jur. § 166; Edwards' case, 1 Whart. & Stille Med. Jur. § 173. In the United States, the doctrine has been rejected, by nearly all the States — by the most eminent jurists — upon the most deliberate consideration. 1 Whart. & Stille Med. Jur. § 174.

So too with the fallacy of "kleptomania," which is found in the refused instructions coupled with the observations as to general *"moral insanity."* This form of mania finds no approval in the courts of English speaking countries — independent of its manifestation in persons mentally insane. While it is sometimes observed as a characteristic of insane persons, just as other eccentricities, and perversions of nature and education, still as a peculiar mania, as a form of irresponsibility, disassociated with general mental unsoundness, it is universally held punishable as a crime. 1 Whart. & Stille Med. Jur. § 592.

WINKLER, J.   This appeal is from a judgment of con-
viction of theft of property over the value of twenty dol-
lars.   From the evidence and the charges of the court,
given and refused, we are led to conclude that the only
defense relied on in the court below was kleptomania,
and if there was error in the charge of the court, and
prejudicial to the rights of the defendant, under this
defense and the testimony on that subject, such error is
to be found in applying the facts to the general subject of
insanity rather than in applying it directly and specifically
to the peculiar condition of the defendant's mind devel-
oped by the proofs; and in this respect we incline to the
opinion that the charge, taken as a whole, was defective
in not giving to the jury a special charge on the subject
of this peculiar symptom, as it relates to the general sub-
ject of insanity.

It is said that kleptomania occurs not unfrequently as
a symptom in mania and the mental confusion incidental
to it, and in depression and delirium, in which its consid-
eration involves less difficulty.   But where it occurs in
cases of concealed insanity, its discovery is not easy.
Wharton & Stille's Med. Jur. § 192.   To our minds, what
has been said by Ellinger and quoted in the authority just
cited, in the nature of practical directions, may well be
considered in connection with the case and the subject
under consideration, not as law but as illustrating the
propriety if not the necessity of a charge to the jury on
this peculiar feature of the case,—as follows: "1. In the
earlier developments of mania, kleptomania is an impor-
tant symptom; it will, however, be found accompanied
more or less by other symptoms of incipient derangement,
such as a general alteration in the accustomed mode of
feeling, thinking, occupation and life of the individual, a
disposition to scold, dispute and quarrel, to drink, and to
wander about busily, doing nothing, and the bodily signs
of excitement (restlessness, want of sleep, rapid pulse,
etc.).   2. Kleptomania continues after the disease, to all

external appearances, has ceased. Here the disease also has not yet terminated, which can only be indicated by a return of the original state of thought and feeling. (This calls for a continued course of observation by the examining physician.)

" 3. There are distinct but occult hallucinations at work. These are to be assumed the more readily the more bizarre and exclusive is the desire to steal, and the more the objects to which it is confined are out of proportion to the property of the thief; and particular attention should be paid to the existence, present and past, of other symptoms of insanity." An instance of this inordinate propensity to steal is cited in this connection from Dr. Rush, who says, " In one instance a woman was exemplary in her obedience to every command of the moral law, except one,— she could not refrain from stealing." We make these further quotations from this authority, as indicative of this peculiar symptom of insanity. " It would be difficult to prove directly that this propensity, continuing as it does through a whole life, and in a state of apparently perfect health, is, notwithstanding, a consequence of diseased or abnormal action in the brain, but the presumptive evidence in favor of this explanation is certainly strong. First, it is very often observed in abnormal conformations of the head, and accompanied by an imbecile condition of the understanding. * * * An instructive case has been lately recorded in which this propensity seems to be the result of a rickety and scrofulous constitution."

We mention these peculiarities in order to show the fact that kleptomania is a recognized symptom of mania, in some of its recognized forms at least, and to illustrate the importance — this being the peculiar defense,— of embracing in a general charge on the subject of insanity, this peculiar symptom,— a feature of the present case to which proper attention seems not to have been paid on the

trial below, and which in our opinion would have been more fully developed if the attention of the jury had been called more pointedly to this feature of the defense.

Other questions are presented by the record and have been discussed in argument, but are not considered by this court, not that they are unimportant or immaterial, but because if they are errors they are susceptible of easy correction on another trial.   Because of what we deem a material defect in the charge, as above indicated, the judgment will be reversed and the cause remanded for a new trial.

*Reversed and remanded.*